# William Tams, who was sued with John Tams, *versus* Saunders Lewis, Trustee of James Tams.

*Former Recovery, when properly pleaded.—Improper Plea will after Verdict be considered as if demurred to.—Defence to Action for Conspiracy to defraud Creditors.*

1. In an action of trespass on the case in the nature of a writ of conspiracy for fraudulently secreting and transferring the goods of a defendant in an execution from the reach of the plaintiff, the defendant pleaded that the same questions as to fraudulent conduct had been made and tried on a *scire facias* against garnishees, in an attachment execution wherein defendant was a garnishee, and that there was judgment therein for the defendant: on the general issue in the action of trespass, there was a verdict for the plaintiff, but the plea being traversed, on the issue thus framed, there was a verdict for the defendant: the court below entered judgment for the plaintiff for the damages found: on writ of error it was *Held*, that the question as to the fraudulent conduct of the defendant being raised incidentally only, on the *scire facias*, and its decision, not essential to that judgment, which was conclusive of nothing more than that the garnishee had not at the time goods of the defendants in his hands, the judgment on the attachment could not be pleaded as a former recovery in the action of trespass : hence, it was not error to enter judgment for the plaintiff on the general issue for the damages assessed.

2. The pleas being bad, they should have been demurred to by the plaintiff, and not traversed : but after the verdict of the jury, the same effect will be given to them, as if they had been demurred to: and they are not aided by the fact that immaterial issues have been formed upon them and found for the defendant.

3. Where the fraudulent acts complained of were committed in 1850, it is not a defence that in 1856, the trustees under the insolvent laws, of one of the defendants, J., had brought an action of *assumpsit* against the other defendant, W., to recover the value of the property fraudulently assigned by J. to W., and had recovered a verdict and judgment : nor was it error in the court to refuse to charge the jury that if the goods sued for in that action were the same as charged to have been fraudulently secreted from the plaintiff, their verdict should be for the defendants : for the plaintiff's right to recover damages for the unlawful acts of the defendants in 1850, could not be affected by a recovery in 1856 for the goods or their value.

4. Testimony was not admissible on the trial of the general issue, that one of the defendants, before the alleged fraudulent transfer, had endeavoured to make sale of his property ; because, if admitted, it would not have shown that the arrangement made with his co-defendant, was honest, and it was therefore irrelevant.

5. Where on an amicable reference to settle the accounts of the defendants, the statement of one of them, J., was produced and read before the arbitrators in the presence of both, without objection on the part of the other defendant, W., except as to one item, the paper containing the statement, identified and proved by one of the arbitrators, held admissible as evidence to show assent on the part of W. to the account as stated by J.: and though from the whole testimony the evidence of such assent was but slight, still it was for the jury, whose province it was to say how much of the account had been proved.

ERROR to the District Court of *Philadelphia*.

This was an action on the case for a conspiracy, brought, Octo-

[Tams v. Lewis.]

ber 4th 1856, by Saunders Lewis, trustee of James Tams, against
William Tams and John Tams; but the writ was not served on
William Tams, by whom the action was defended.

The declaration contained three counts, and charged that the
defendants, in pursuance of a fraudulent conspiracy, had secreted,
assigned, and transferred to persons unknown, the goods and
chattels of John Tams, and thereby fraudulently preventing the
plaintiff from having execution thereof, upon a judgment which
he had previously recovered against John and Edward Tams.

To this the defendant pleaded—1. Not guilty.   2. That the
question of combination and conspiracy to defraud had been tried
under a certain attachment execution, sued out by Saunders
Lewis, in which William Tams was garnishee, in which a verdict
was rendered in favour of William.   3. That in the said attach-
ment, the question whether John possessed goods of sufficient
value to pay the amount of the judgment, and the question, as to
the combination and conspiracy, had been tried, and a verdict ren-
dered for William Tams; and 4. That the same questions were
tried under a certain other attachment execution, sued out by
Edwin Tams, in which William was garnishee, in which a verdict
was rendered against William for $3137.50.

To these pleas the plaintiff filed a special replication, travers-
ing the facts alleged in the pleas, and concluding to the country.

On the trial the following points were presented by the coun-
sel :—

The plaintiff requested the court to charge the jury :—

1. An attachment of execution by the plaintiff laid in the
hands of the defendant, William Tams, upon a judgment against
John Tams, and a judgment thereon against the garnishee, is no
bar to a suit by the plaintiff against William Tams and John
Tams, for a conspiracy to defraud him, the plaintiff, by a fraud-
ulent sale of personal property by John Tams to William Tams.

2. A suit by the insolvent assignees of John Tams against
William Tams, to recover money had and received by the latter
to the use of such assignees, and a judgment thereon, is no bar
to the present suit.

The counsel for the defendant also requested the court to
charge the jury :—

1. That as the plaintiff has charged, in his declaration, a con-
spiracy against this defendant, with one John Tams, to defraud
him, therefore, to sustain this suit he must prove that the con-
spiracy was to defraud this particular plaintiff of his judgments
set forth in his declaration, and evidence of a conspiracy to
defraud the creditors of John Tams generally, does not support
the cause of action as laid in the narr., nor, under such evidence,
entitle him to recover.

2. That if the jury believe, from the evidence, there was a

[Tams *v.* Lewis.]

sale of the property by John Tams to William Tams, and the goods so sold in 1850, after said sale, were kept openly in the store where they had been previously kept, so that the plaintiff, at any time during the period of about one year they so remained, could have levied upon them, if he believed the sale to have been illegal and fraudulent, it was not a secreting of the property of John Tams, as charged in the *narr.*, and should the jury so find, their verdict should be in favour of the defendant.

3. That it now appearing, from the evidence before the court and jury, that, on the trial of the cause, in the attachment execution between the said Saunders Lewis, the present plaintiff, and the said William Tams, held on the 29th day of September 1856, the question of the fraudulent transfer of the property of John Tams to William Tams, for the purpose of defrauding creditors, was tried, and a verdict and judgment rendered thereon in favour of the said defendant, it is conclusive in this action, and a bar to the plaintiff's right of recovery now.

4. That should the jury find, from the evidence, that, on the trial of the attachment execution between the said Saunders Lewis and William Tams, the defendant, had on the 29th of September 1856, the question was submitted by the court to that jury, and passed upon by them, whether the property of John Tams had been transferred to William Tams for the purpose of secreting it, or hindering, delaying, or defrauding the creditors of the said John Tams, and that jury having rendered a verdict in favour of the said William, and a judgment of the court having been given on the same, their verdict should be in favour of the defendant in this action.

5. That it appearing to the court that, in an attachment execution, at the suit of Edwin Tams, plaintiff, and the said William Tams and other defendants, of December Term 1851, No. 720, on a trial held the 13th day of May 1853, the question whether John Tams had, in November 1850, assigned and transferred his property, now the subject of controversy, to the said William Tams, for the purpose of defrauding the creditors of the said John Tams, was then submitted by the court to the jury, and the jury, on the trial of said cause, having found a verdict against the said William Tams for $3137.50, and judgment given on the same, and this sum having been paid by the defendant, under the pleadings and evidence in this cause it is conclusive, and therefore the verdict should be in favour of the defendant.

6. That the plaintiff having charged, in his declaration, a conspiracy to defraud the creditors of John Tams generally, against this defendant, by a purchase of goods fraudulently, a recovery in any action for the value of the goods which were the subject of such fraudulent transfer, and the payment of the same, is a bar to any other action for the same goods, or for damages

[Tams v. Lewis.]

resulting from the alleged fraud thus generally averred in his declaration.

7. That, in an action for a conspiracy to defraud creditors, the measure of damages is the value of the property fraudulently conveyed, and not the amount of the plaintiff's claim; and if the value of the goods has been once recovered, there can be no other or further recovery for the same.

8. That should the jury find, from the evidence, that the goods, chattels, and moneys, sued for in the action and suit brought and prosecuted by Bullitt & Fairthorne, trustees of John Tams, were the same goods and chattels which the present plaintiff claims, the said John and William Tams conspired and combined together to secrete, fraudulently transfer, and assign to persons or places unknown, as alleged in their declaration, there can be no recovery by the present plaintiff for them in this action; and should they so find, their verdict ought to be in favour of the defendant.

9. That it appearing, from the evidence in this cause, that there was but one transfer of goods and property by John Tams to William Tams, and that on the 11th day of November 1850; and if the jury should be satisfied, from the evidence, that the verdict and judgment recovered by Bullitt & Fairthorne, trustees of John Tams, was for the same property sold, assigned, and transferred on that day to William Tams, there can be no recovery for that property in this action, even should the jury believe that the sale might have been for the purpose of hindering, delaying, or defrauding creditors.

10. That should the jury find, from the evidence, that Bullitt & Fairthorne, assignees of John Tams, in their suit against William Tams, recovered a verdict for the same property, now the subject of dispute, and alleged to have been fraudulently conveyed by John to William Tams, there can be no recovery by the present plaintiff in this action.

On the points propounded by the plaintiffs, the court (STROUD, J.) answered as requested, but refused the answers requested on the 1st, 2d, 3d, 4th, 5th, 6th, 8th, 9th, and 10th points of the defendants; and on the 7th point told the jury, that as to the measure of damages, it was correctly stated; and that if the present plaintiff had, in any former action, recovered the value of the goods alleged to have been the subject of the conspiracy between John and William Tams, this would be a bar to the recovery in this action; but that there was no evidence of any such recovery heretofore.

Under these instructions, there was a verdict in favour of plaintiff for $6033 on the issue raised by the plea of not guilty. The issues raised by the special pleas were found by the defendant.

[*Tams v.* Lewis.]

On the 7th of January 1861, the counsel for the plaintiff obtained a rule for a new trial, and for the entry of judgment in favour of plaintiff, *non obstante veredicto.* On the 6th of April 1861, the motion for a new trial was refused, but judgment was entered in favour of plaintiff *non obstante.* The case was thereupon removed into this court, where the principal error assigned was the entry of judgment, as above stated. There were several other assignments of error as to the rejection of certain portions of defendant's evidence, the affirmance of plaintiff's points, and the refusal of the learned judge before whom the cause was tried, to charge as requested by the defendant; all which are sufficiently stated in the opinion of this court.

*A. V. Parsons* and *Theodore Cuyler*, for plaintiff in error.— The jury found for the plaintiff on the plea of " not guilty," and in favour of the defendant on all the special pleas—when the defendant asked for a judgment in his favour on those pleas, particularly the first and second. In those pleas the defendant avers that, in a former trial between the same parties, the question, the same cause and ground for action was tried before a jury, when there was a verdict and judgment rendered in favour of this defendant, which was unreversed nor made void.

To these pleas the plaintiff replied, denying the fact that the same question was tried between the same parties in a former trial, and in his replication concluded to the country; and this was the issue on the first two special pleas between the parties. On it the jury have found a verdict in favour of the defendant.

Was such a finding a bar to this action? If it was, then the defendant was entitled to a judgment in his favour on the verdict. Does a former trial, of the same question of law and fact between the same parties, bar a second action?

We think the rule of law is well settled that whatever may be the form of action, if the original question appears to have been the same, and the same evidence will support both actions, and a judgment be had on the merits, it bars all other actions for the same cause of controversy: Wilson *v.* Hamilton, 9 S. & R. 424; Cist *v.* Zeigler, 16 Id. 282; Marsh *v.* Pier, 4 Rawle 273; Souter *v.* Baymore, 7 Barr 417; Duffey *v.* Lytle, 5 Watts 120; Bower *v.* Tallman, 5 W. & S. 556; Carmony *v.* Hoober, 5 Barr 309.

Acting under the case as thus settled, the defendant did show, by testimony of the jurors who tried the former cause, that on the previous trial the question decided by that jury was, whether the sale of the store of goods from John to William was fraudulent or not, and made merely to hinder, delay, or defraud creditors. And now we have the finding of the present jury of that fact in our favour, which is conclusive: Phillips *v.* Burch, 16

[Tams v. Lewis.]

Johns. 189, 161; Brackway v. Kinny, 2 Johns. 210; Fanningeton v. Payne, 15 Id. 432; Parker v. Thompson, 3 Pick. 429; Rizer v. King, 7 Johns. 20; Kitchen v. Campbell, 2 Black. Rep. 881; 3 Wilson 304–8; Boget v. Williams, 3 Bain & Hess 235; Tams v. Richards, 2 Casey 97; Rockwell v. Langley, 7 Harris 509.

But, we are told, that on an attachment execution *sur* judgment, the question of fraud in the sale, and a combination between John and William Tams, could not arise. We reply, that we plead that the question did arise, and was tried by a jury; and we have the verdict of the jury who tried this cause on this issue that it did arise, and was decided. If it could not, in law or fact, arise on the trial between the same parties, why did not the plaintiff demur to our pleas? That it could arise, is clearly shown by the cases of Penrod v. Mitchell, 8 S. & R. 522; 2 Penna. Rep. 126; Mott v. Danforth, 6 Watts 308.

*John S. Powell, William L. Hirst*, and *B. Gerhard*, for defendant in error.—The judgment was given by the court below in favour of the plaintiff, *non obstante veredicto*, on the ground that the issue raised by these pleas was immaterial. That question could have been raised upon demurrer, but the plaintiff having replied and gone to trial, it was decided by the court below upon the motion for judgment. The error complained of does not seem to embrace the fourth plea; if it does, it has been abandoned by the plaintiff in error in his argument. Were it otherwise, there would be no difficulty in regard to it, the attachment execution of Edwin Tams being by a different plaintiff, and it having been decided by this court that a verdict and judgment in an attachment execution is no bar to a subsequent attachment by another creditor, directed against the effects of the same defendant, in the hands of the same garnishee: Breading v. Seigworth, 5 Casey 396. Tams v. Bullitt, 11 Id. 308, would apply this doctrine still more strongly to another and different form of action.

The error alleged as to the second and third pleas then remains. This action was brought against William and John Tams, for defeating the plaintiff's execution by the fraudulent sale of November 11th 1850. At that time the plaintiff was entitled to recover the entire value of the goods withdrawn from the reach of his execution: Penrod v. Mitchell, 8 S. & R. 522. Has anything taken place since to prevent a recovery of these damages, and can the attachment execution of Saunders Lewis against William, as garnishee, be a bar? In the latter, the object of the trial was to determine the amount then held by William of either goods or money belonging to John Tams, the plea being *nulla bona*, while the present action is one against John and William both, for a tort, the parties defendant being different, and it being

possible to introduce evidence that would have been entirely incompetent under the other action.

The plaintiff in error has cited a number of authorities as to the cases in which the plea of *res judicata* may be pleaded, and whether it is a question for the jury. A few of them only need be considered. The jury have passed upon the issues raised by these pleas. Only the one point is left for argument. In pleading a former recovery, it is essential that it should appear to have been not only for the same cause of action, but between the same parties: Hampton *v.* Broom, 1 Miles 241; Marsh *v.* Pier, 4 Rawle 273.

In Tams *v.* Richards, 2 Casey 97, the moneys held by Richards, Bispham & Co. were the proceeds of goods received by them through William Tams, as his agents. These moneys were recovered by Edwin Tams from William, on the ground of the goods having been obtained by him originally in fraud of creditors, and to have permitted a recovery of their value from his agents, the auctioneers, would have been to make William pay their value twice over to the same person. Without this explanation there would appear a manifest inconsistency between the ruling in this case and that of the subsequent cases of Breading *v.* Seigworth and Tams *v.* Bullitt. "But a bar in one assize, &c., is a bar in every other. Here, by actions of the like nature, must be meant actions in a similar degree, not merely those which have a similitude of form:" Hitchin *v.* Campbell, 2 W. Black. 831. Can the two actions of Saunders Lewis be considered in any manner as being of the same degree? All personal actions are treated as such in the case last cited, but upon being defeated in a real action, the plaintiff could resort to one of a higher degree. An attachment execution is created by the Act of 1836, and is *in rem* as well as *in personam.* The issues raised were on the pleas of not guilty and *nulla bona,* the ends to be attained are entirely different. In no sense, then, can an attachment be considered as of the same degree as an ordinary personal action. It was not merely a choice between two forms of action whereby the remedy would have been the same, as in Cist *v.* Zeigler, 16 S. & R. 282.

The question is, what amount of damage we suffered by the sale on the 11th of November 1850? while the question in the attachment was, what amount of the property of John Tams was in the hands of William at the time of the service of the writ of attachment on him in 1853.

"In any use of the attachment which the Act of Assembly warrants, no such questions as those which are stated in the defendant's second plea could have arisen in the course of the proceedings upon the attachment there mentioned.

"Nor could the action to which the defendant's second plea was

[Tams v. Lewis.]

pleaded, and the attachment execution to which it refers, be said in any proper legal sense to be for the same cause of action. The first is founded in tort, and so declared upon clearly and positively, whilst the attachment execution, by virtue of the Act of Assembly which authorizes it, is limited to the enforcement of a judgment, by subjecting for that end certain intangible property of the original defendant, and certain rights of the same intangible things, where, by reason of a contract between such defendant and a third person, an interest in and control over the same has been acquired by the latter :" Finley v. Hanbest, 6 Casey 190.

In addition to this, the verdict of Edwin Tams for $3137.50 had been obtained before the issuing of the attachment of Saunders Lewis from the goods of John, in the hands of William, obtained through the fraudulent sale, which is the basis of this action, thus clearly depriving the plaintiff of that amount should the special pleas be held to be a bar. The action of Bullitt & Fairthorne, the insolvent assignees, in which the record of the case of Edwin Tams was given in evidence as a set-off, shows a further sum of $2647.22, of which the plaintiff was also deprived, and which would be lost to him were the views of the counsel of the plaintiff in error taken as correct.

The plaintiff below was injured by a fraud; subsequently, by diligence, he obtained part of what he had then lost. His right to recover the remainder cannot be affected by the recovery of strangers. He would still have his action for the wrong done him.

The filing of the petition, and the discharge of John Tams in the Insolvent Court had taken place in 1852, between the fraudulent sale and the issuing of the attachment; the latter, therefore, could only apply to goods or funds in the hands of William subsequent to the insolvent proceedings. Though the verdict on the plea of *nulla bona*, in the attachment, was for the defendant as to the goods in his hands, yet, on the question of fraud or no fraud, it was for the plaintiff since the verdict.

The opinion of the court was delivered, April 26th 1862, by

Strong, J.—This was an action of trespass on the case, in the nature of a writ of conspiracy, and the tortious overt act averred in the declaration was, that John Tams and William Tams, in pursuance of a fraudulent conspiracy, had secreted, assigned, and transferred, to unknown persons, the goods and chattels of the former, and thereby fraudulently prevented the plaintiff from having execution thereof, upon a judgment which he had recovered against the said John Tams and one Edwin Tams. Only William Tams was summoned, and the case was tried upon issues tendered by him alone. Of these the general issue was

the first, and upon that the jury found a verdict for the plaintiff. This, of course, established all the material averments of fact contained in the declaration.  But the defendant tendered other issues.  He pleaded also that in 1853, nearly three years after the conspiracy and overt acts charged in the declaration, the plaintiff had sued out an attachment execution against John Tams and Edwin Tams, and therein had summoned, among others, William Tams, the defendant, as garnishee; that on the trial of the issues, formed in the *scire facias* against the garnishee, the same questions were made and tried which are raised by the general issue in this case, and that there was a verdict and judgment in favour of the garnishee.  The averments contained in these pleas were traversed by the plaintiff, and on the trial the issues thus formed were found for the defendant.  Thus the record exhibits that on the general issue there was a verdict for the plaintiff, and on these special issues verdicts for the defendant.  The court below, notwithstanding, entered a judgment for the plaintiff for the damages found under the general issue.  This is assigned for error, and it is the only important matter presented in the cause.

If the special pleas of the defendant, found true as they have been, can avail him at all, it is because they aver a former recovery, and therefore exhibit an estoppel of record.  A former verdict and judgment between the same parties is undoubtedly conclusive of the thing directly decided by them, and of every fact which was essential to the adjudication.  Nor is it necessary that the question should be presented the second time in the same form of action.  But a former judgment is not conclusive of anything which was not directly decided by it, or was not material to the decision.  Before such an effect can be given to it in another suit, it must appear, either from the record or *aliunde,* that it must have rested on the precise question which it is sought again to agitate.  In many cases, whether this is so or not, appears from the record itself, in others it is shown by evidence not inconsistent with the record, that the thing alleged to have been adjudicated was necessarily and directly involved in the judgment.  This is indispensable to an estoppel of record. Thus in the Duchess of Kingston's Case, 11 State Trials 261, it was said by Chief Justice De Grey, in delivering the opinion of the judges, that "neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter incidentally cognisable, nor of any matter to be inferred by argument from the judgment."  The same thing was ruled in Hibshman *v.* Dullebun, 4 Watts 183.  And if a judgment does not conclude anything only incidentally arising in the trial which resulted in the judgment, much more can it not conclude a

[Tams v. Lewis.]

matter immaterial to it, a thing which could not have been legitimately tried. If these principles be kept in view, there is very little difficulty in this case. The substance of the defendant's second and third pleas is, that there had been a judgment against the plaintiff on a *scire facias*, sued out by him against the defendant, upon an attachment execution against John Tams. This, in itself, was no defence. All that is directly involved in the judgment on the *scire facias* is, that the defendant, at the time when the attachment was tried, had in hand no personal estate belonging to John Tams, in the language of the Act of Assembly, "debts due," "deposits made," or "goods or chattels pawned, pledged, or demised," as described in the act, that is bailed. The pleas also aver, and with truth, as the jury have found, that on the trial of the *scire facias*, it became a question whether the allegations, which the plaintiff makes in this suit, were founded in fact. But this question was not the direct subject-matter of adjudication. If made at all, as for the purposes of this case it must be treated as having been, it could at most have been only incidentally. The form of the writ and the plea, *nulla bona*, settle so much. Then what matters it, that the questions were made on that trial? If they were only incidentally made, if their decision was not essential to the judgment, and especially if they were immaterial questions, no case rules that they can no longer be controverted. And it is noteworthy that the special pleas, whilst setting out the attachment execution, do not aver that the questions which they allege to have been made on the trial were material to the controversy then existing between the parties, or that their decision was essential to the judgment. Nor could they have been. How could the possession of attachable property by William Tams, in June 1853—property which then belonged to John Tams, be established by the facts that in 1850 John Tams and William Tams had contrived and intended to injure Saunders Lewis—that they had then conspired to secrete, transfer, and assign to unknown persons, the goods and chattels of John Tams, and in pursuance of their conspiracy, had secreted, transferred, and assigned goods and chattels, and had wrongfully converted them to their own use, and that Saunders Lewis had been prevented from collecting his debt? Or how could the garnishees' plea of *nulla bona* be made out by disproving these facts? If they had all been proved, they would not have shown a case for an attachment execution. What boots it then that the questions were made, if they were immaterial?

The case is complicated by the fact that the plaintiff, instead of demurring, traversed the averment of the pleas. The difficulty arising from this, however, is rather apparent than real. After the verdict of the jury, the same effect is to be given to

[Tams *v.* Lewis.]

the pleas as if they had been demurred to, and no more : Clears *v.* Stevens, 8 Taunt. 413. If the pleas were bad, they are not aided by the fact that immaterial issues have been formed upon them and found for the defendant. If an immaterial issue be joined upon a good plea and be tried, a repleader will be awarded. But if the plea contain nothing of substance, if no material issue could be formed upon it, a repleader would be useless : 1 Burr. 301; Cowp. 510; 1 Strange 397; 1 Hamp. 268. Then judgment will be given upon the record as if the bad plea had no existence.

These remarks are in part applicable to the issues formed upon the last plea, to which the additional remark may be applied, that the record pleaded was *inter alios partes.* There was therefore no error in giving judgment for the plaintiff, there having been a verdict for him on the general issue, and the other issues having been immaterial.

Nor are the errors assigned to the charge of the court sustained. Most of them have been answered by what has already been said, for they present the question, what was the effect of the averments contained in the special pleas ? If those pleas did not set out a former recovery, then what was said in regard to them was correct; then there was no evidence of any such recovery. It is, however, urged that there was error in not affirming the eighth, ninth, and tenth points presented to the court by the defendant. It appeared in evidence that in 1856 Bullitt & Fairthorne, trustees under the insolvent laws of John Tams, had brought an action of *assumpsit* against William Tams, in which they claimed to recover the value of personal property fraudulently assigned by him to the defendant, and had recovered a verdict and judgment. The court was asked to instruct the jury that if they believed the goods, chattels, and money sued for in that action were the same which the plaintiff avers in this case to have been fraudulently secreted, the verdict should be for the defendant. The points are in substance but one. The instruction asked was refused, and it is very clear it could not have been given. If the facts be as the jury had found under the general issues, that in 1850 John Tams and William Tams conspired to defraud the plaintiff, by secreting property so that he could not levy upon it, and carried out their fraudulent design, they became immediately liable to him in damages to the extent of the injury which he had sustained in consequence of their unlawful acts. The extent of his injury was measurable by the value of the goods fraudulently abstracted : Penrod *v.* Mitchell, 8 S. & R. 522. In suing for these damages he claims neither the goods nor their value. He has nothing to do with the value of the goods any further than as a measure of the injury which the defendant's tortious acts have caused him. How, then, can a recovery of the value of the goods, or of the

[Tams v. Lewis.]

goods themselves, by Bullitt & Fairthorne, affect his right to recover from the tort? It does not repair the injury which he sustained, or atone for the wrong done him. Their recovery does not pay his judgment, though it may have proved that fraud is unprofitable. They succeeded to no rights of the plaintiff, and of course could not discharge any personal claim which he had against the defendant, and if they could not discharge they could not enforce.

We do not perceive that the defendant was injured by the rejection of the questions proposed to the witness, Robert J. Bell. That at an earlier date John Tams had endeavoured to make a sale of his property, or that some one had contemplated purchasing, could not have tended to prove that his arrangement with his brother was honest. On the contrary, his inability to make such a sale may have been a motive to cover the property from creditors.

The correctness of the admission of the account of John Tams, referred to in the third assignment of error, is more doubtful. Whether admissible or not, depends upon the testimony of Charles Brooks. He had been an arbitrator between John Tams and William Tams. What was sought to be proved by him was, that the account had been assented to in whole or in part by William Tams. If it had, it was proper to be submitted to the jury. On this subject it must be conceded that his testimony was not very satisfactory. Still, it tended to prove that the paper was before the arbitrators when both John and William Tams were present; that it was read over, and the items ticked off by the witness, and that this must have been done under the inspection or in the hearing of William Tams, for he objected to one of the items charged to him, alleging that it had not been paid, but does not seem to have made any other objection. The identity of the paper seems to have been pretty clearly shown. Now, though the evidence of assent may be slight, we cannot say it amounts to nothing, and unless it did, it was proper to submit it with the paper to the jury. It was then for them to say how much was proved.

Being of opinion, therefore, that none of the errors assigned are sustainable, we affirm the judgment.

Judgment affirmed.