## Williams *et al. versus* Row *et al.*

1. A decree in equity is conclusive in proceedings at law where the material matter in issue is the same.

2. In a bill for discovery, the general prayer "for such other and further relief as equity and good conscience may require," &c., is referable only to the main purpose of the bill—discovery.

3. To make a decree dismissing a bill conclusive, the record must show that the matter claimed to be concluded was the very matter passed upon.

May 10th 1869. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. Absent, READ, J.

Error to the Court of Common Pleas of *Cumberland county:* No. 35, to May Term 1869.

This was an action of ejectment by Peter M. Row and others, heirs of John Row, deceased, against H. H. Williams and others, for a lot of land in the borough of New Cumberland. The writ issued to November Term 1867.

On the trial, before Graham, P. J., the plaintiffs gave in evidence a deed for the lot in dispute from James Feeman, a former owner of the lot, to John Row, under whom they claimed as their ancestor. They also gave in evidence proceedings in equity in which the present defendants were complainants and Row, the ancestor of the plaintiff, was respondent.

The bill in those proceedings set out, that the complainants

[Williams v. Row.]

were heirs at law of John Gurtner, who died about the year 1864; that about the year 1857 Gurtner contracted with Feeman for the lot in controversy for the consideration of $150; that the deed, at Gurtner's instance, was made to Row; Gurtner took possession; paid Feeman $37; built a shop and other improvements on the lot to the value of about $425; that the deed made to Row was designed to be in the nature of a mortgage to secure him the amount advanced by him to Gurtner towards the purchase-money. Row never was in possession, and frequently declared that when he was paid his advance he was to make a deed to Gurtner for the lot; after Gurtner's death, the complainants tendered to Row the money due him and demanded a conveyance, but Row refused to receive the money or make the conveyance, claiming to be the owner of the lot. The bill concludes, "In consideration of which, and also that your orators may have discovery of the matter aforesaid, and to the end therefore that the defendant may, if he can, show why your orators should not have the relief hereafter prayed for," &c., the complainants prayed that the respondent should be required to appear and make "answers to all and singular the premises, and further to stand to and abide by and perform such further order, direction and decree as to the court may seem meet, and that your orators may have such other and further relief as equity and good conscience may require."

There were five interrogatories appended to the bill: 1. Did Row hold a deed for the lot from Feeman, when was it conveyed, what was the contract between Row and Feeman before the deed was made, when and by whom the improvements were put on? 2. Had Gurtner anything to do with purchasing the lot, and what; how did Row become a party to the deed; what agreement was there between Gurtner and Row? 3. How much purchase-money did Row and Gurtner respectively pay, why did Gurtner take possession, and why did Row allow it? 4. Had Row and Gurtner any settlement as to the purchase-money, and what did the settlement involve? 5. Why did Row refuse to convey the legal title to Gurtner's heirs, and whether Row would convey to them, and, if so, on what terms?

Row in his answer denied, at much length, the averments in the bill; especially averred that the conveyance to him was absolute. A replication was filed. After hearing, the court dismissed the bill, and directed the complainants to pay the costs. The plaintiffs, after giving evidence of possession by the defendants and the improvements, closed.

The defendants then offered to show that Gurtner contracted with Feeman for the purchase of the lot in dispute; that Row took no part, and was not known by Feeman in the contract; that previous to the execution of the deed, Gurtner arranged with Row for the loan of $100, with the understanding that the deed for the

[Williams *v*. Row.]

said lot should be made by Feeman to Row as security; that Gurt-ner paid Feeman $37 of the purchase-money, and Row paid him $100, and the deed was made to Row; that it was agreed between Row and Gurtner that, on the payment of the $100 by Gurtner, Row was to make title to Gurtner; that Gurtner immediately took possession of the lot, and made improvements on it, equal in value to the lot itself; that it was assessed in his name, he paid the taxes and held possession until 1864, using it as his place of busi-ness, and paying Row $6 per annum interest on the money loaned; that Row acknowledged to different persons that Gurtner had paid part of the purchase-money to Feeman, and that he held the deed as security for the $100 which he had paid for Gurtner; that when Gurtner repaid the $100 he would be entitled to have the deed in his own name; that Row never exercised any right of ownership over said lot, but had repeatedly declared that the lot belonged to Gurtner; that the defendants tendered to Row the $100, together with the interest thereon due, and Row said that the arrangements hereinbefore stated had been made, but that they had been made with Gurtner, that he was now dead and the lot had risen in value, and therefore he declined to accept the money."

They offered, also, other evidence tending to show that the transaction was a mortgage only to Row.

Both offers were rejected by the court, on the ground that the decree in equity was conclusive; and several bills of exception were sealed for defendants.

The court instructed the jury that under the evidence the pro-ceedings in equity were conclusive, and therefore they should render a verdict for the plaintiffs. The jury accordingly found for the plaintiffs. The defendants took a writ of error, and assigned for error the rejection of their offers of evidence and the charge of the court.

*S. Hepburn, Jr., M. C. Herman* and *W. M. Penrose*, for plaintiffs in error.—A deed taken to secure a loan is a mortgage, Houser *v*. Lamont, 5 P. F. Smith 311, and can be shown by parol to be such: Beck *v*. Graybill, 4 Casey 66. The prayer of the bill was for discovery, and did not conclude the title. If different matters could have been litigated in a case, that they were so may be proven by extrinsic evidence: 2 Sm. L. C. 688. There is nothing in the records to show that the bill was dismissed on the merits.

*H. Newsham* and *W. H. Miller*, for defendants in error.—The judgment in equity has the same effect as one verdict and judgment in ejectment on an equitable title, which is conclusive: Peterman *v*. Huling, 7 Casey 432; Seitzinger *v*. Ridgway, 9 Watts 496;

[Williams v. Row.] .

Saylor v. Hicks, 12 Casey 392.  The decree in equity was right, the equity could not be shown by parol: Barnet v. Daugherty, 8 Casey 372; Postlewait v. Frease, 7 Id. 472; Brawdy v. Brawdy, 7 Barr 157; Moore v. Small, 7 Harris 461; Poorman v. Kilgore, 2 Casey 365.

·The opinion of the court was delivered, July 6th 1869, by

THOMPSON, C. J.—The material question on this record is whether the court below erred in holding the order dismissing the bill in equity filed by the defendants below against Peter M. Row, the ancestor of the plaintiffs, and ordering them to pay the costs, as conclusive between the same parties and their legal representatives in this suit.   Holding it to be so, the learned judge below overruled the defendants' offer of testimony, which was very natural, on their theory of the matter in dispute.

The bill in equity filed by the defendants below and dismissed, the plaintiffs'. claim, covered the very ground of controversy here; namely, that the plaintiffs' title is absolute and unaffected by any trust, and not in the nature of a pledge or security for money advanced for the ancestor of the defendant Gurtner, to enable him to purchase the land in controversy.   If the same question be the material matter in issue now that was determined in the equity suit against·the defendants, it must be admitted that it was concluded by the decree in equity: Saylor v. Hicks, 12 Casey 392; Kelsey v. Murphy, 2 Id. 78; and cannot be again controverted by the parties thereto.

. But as this is an estoppel by matter of record, we must look to see what the record says, what it was that the plaintiffs claimed by their bill.  Whatever may have been intended, the only prayer in the bill was for a discovery by the answer of the defendant Row of the several matters averred to be true in the bill.   After reciting them the bill says, " in consideration of which, and also that your orators may have *discovery of the matters·aforesaid,* and to the end therefore, that the defendant may, if he can, show why your orators should not have the relief hereafter prayed for, and may on his oath, and according to the utmost of his knowledge and belief, full, true and perfect answers make, to all such of the several interrogatories hereinafter mentioned and set forth," &c. Then follow the interrogatories, inquiring whether he did not hold a deed for the lot in question from one Joseph Feeman; whether John Gurtner had anything to do with the purchase, and how he, Row, became a party to the deeds, and what agreement there was between him and Gurtner in regard to the lot?   How much purchase-money did he pay, and how much did Gurtner pay, and how did the latter come to take possession of the lot?   Whether the said defendant and Gurtner had any settlement involving the purchase-money of the lots, and if so, when made and its terms; and

[Williams *v.* Row.]

lastly, why he refused to convey the legal title to the heirs at law of John Gurtner, deceased, or whether he was willing to convey and on what terms?

The bill charged that the deed had been made to Row as security for $100 of the purchase-money which he agreed to advance, and did advance, for Gurtner to Feeman in payment of the lots, and that that sum with interest had been tendered to the defendant before the filing of the bill.

The only prayer following the interrogatories is for process, commanding the defendant to appear before the court on a day certain, " then and there full, true, direct and perfect answers to make, to all and singular the premises, and further to stand to, abide by, and perform such further order, direction and decree as to the court may seem meet, and that your orators may have such further relief as equity and good conscience may require."

Undoubtedly this was a defective bill of discovery and nothing else; and the general prayer at the end of the bill for such other and further relief as equity and good conscience may require, must be regarded as referable only to the purposes of the bill, namely, to effectuate discovery. There is no prayer for a decree to convey on payment of the money, which it was alleged the deed was given to secure, or that the deed might be declared a mortgage. That being so, it seems to us the question determined by the dismissal of the bill, was merely the question of discovery and not of title, and that the decree was conclusive of nothing involved in the ejectment. In fact there is nothing on the record to show what was heard, or that there was a hearing at all; the entry claimed to be a decree, being simply, "*proceedings dismissed and plaintiffs directed to pay the costs.*" It seems irreconcilable with all ideas of justice, to hold such an entry decisive of a title, without it appearing that that was the very question in controversy—and that that was what was determined by the words used. I do not mean to be understood as holding that in any case a decree dismissing a bill is not conclusive on the parties, in regard to the subject-matter of the bill; the contrary is the rule, but I do claim, that to be conclusive, the record must show the very matter claimed to have been passed upon, which is claimed to be concluded. That does not appear here. ".In order that a judgment in one action shall be conclusive in another, it must appear with convenient certainty, that the question in controversy in the second suit was litigated and decided in the first:" 2 Smith, Lead. Cas., 5th Am. ed. 668. This is most fully illustrated by the case of Kelsey *v.* Murphy, already cited. The bill in that case, like this, was dismissed, and this was claimed to be an adjudication of the very question involved in the second suit; but this court dissected the bill, and showed, that while it was a similar claim in one aspect of the case, it was not so in all, and not conclusive.

[Williams v. Row.]

It is not an answer to these views, that it could not have been for discovery that the bill in question was filed, for there was no action pending in which the discovery might be used. That is not a reason why it might not have been erroneously filed, but it is a good reason why it ought to have been dismissed, and interpreting the entry by the records, it is most likely this was the reason why the "proceedings were dismissed," and the plaintiffs ordered to pay the costs.

For these reasons we think the court erred in holding the record of the equity case conclusive of the question proposed to be raised by the offers of the defendant, and in rejecting the offer. Therefore, for the rejection of the offers constituting the 1st and 2d assignments of error, and for error in charging that the equity proceedings were conclusive, this judgment must be reversed. The defendants were entitled to show, if they could, what they proposed, and certainly if they succeeded in establishing that the deed to Row was simply as security for the sum of $100 advanced for Gurtner then it was a species of mortgage, subject to the doctrine that the defeasance might be shown by parol : Kenton v. Vandergrift, 6 Wright 339, and could only be used to enforce the payment of the money secured by it : Houser v. Lamont, 5 P. F. Smith 311.

Judgment reversed, and *venire de novo* accorded.

SHARSWOOD, J., dissented.