## Cirotti, Appellant, *v.* Wassell.

Argued March 17, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*William S. Stein,* with him *Martin G. Stein,* for appellant.

*Harry M. Miller,* with him *Max Aron,* for appellee.

OPINION BY HIRT, J., August 4, 1948:

Plaintiff entered into a written agreement with defendant for the purchase of an apartment house property in Philadelphia. On signing the agreement he made a down payment of $1,000 to apply on the purchase price of $12,500. At the final meeting for settlement, plaintiff by his attorney rescinded the agreement because of defendant's alleged inability to perform her agreement. He then brought this suit to get back his hand payment.

At the close of plaintiff's case the trial judge entered a compulsory nonsuit and the court subsequently refused to take it off. The order will be reversed.

These facts must be taken as admitted: Plaintiff was attracted to the property as a real estate investment by an advertisement of defendant's agent to the effect that there were ten suites in the apartment house and that they were all under leases, yielding a total monthly rental of $390. In a subsequent conference with the agent plaintiff was told that the total monthly rents were but $374 and the carrying charges $695 yearly. On these representations plaintiff signed the sales agreement on November 20, 1945, and made the above hand payment. He was ready and able to perform his obligation according to its terms, at settlement time. The agreement provides: "Possession to be delivered by deed and *assignment of existing leases and O.P.A. rent registrations* . . ." A construction of the phrase in italics raises the question involved here.

At the original meeting for settlement defendant produced registration certificates of the Office of Price Administration for only five of the ten apartment units. She then stated that the certificates for the remaining five apartments had been mislaid and could not be found. The time for settlement was then postponed to give her an opportunity to produce them. At the adjourned meeting defendant submitted certificates for the five apartments in question, which indicated on their face that they were "Delinquent Registrations" which had been filed with the O.P.A. but a few days before. It was a reasonable inference that these were the first attempts of the defendant to register the leases of the five rental units with the O.P.A.

It is conceded that the rents of each of the five apartments, the subjects of the delinquent registrations, were subsequently reduced by the O.P.A. to amounts substantially lower than the rents reserved in the existing leases of the apartments. Plaintiff was prepared to prove

the precise amounts of the reductions ordered by the O.P.A. but was prevented by a ruling of the trial judge sustaining defendant's objection to the offer of proof.

Under the Federal Rent Regulations applicable to the leases of all ten apartments, which became effective July 1, 1942, every landlord was required on or before a specified date to register his property with the Office of Price Administration, identifying each dwelling unit and stating the amount of rent reserved in each instance. 8 F. R. 7322. Section 4(e) of the regulations provides: "If the landlord fails to file a proper registration statement within the time specified (except where a registration statement was filed prior to October 1st, 1943) the rent received for any rental period commencing on or after the date of the first renting or October 1st, 1943, whichever is the later, shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under Section 5(c) (1) . . ." .

In this, our review of the order to take off the non-suit, plaintiff is entitled to the construction of the contract most favorable him, that the writing will permit. *Kimble v. Wilson,* 352 Pa. 275, 42 A. 2d 526. The writing was the entire agreement between the parties. But the lower court was clearly wrong in holding as a matter of law that the assignment of "Delinquent Registrations" complied with defendant's obligation under the contract. The intent of the parties as to what kind of "O.P.A. rent registrations" defendant was bound to deliver, was a question for the jury.

It is a familiar rule of law that if words of a contract are technical or indefinite or equivocal, parol evidence is admissible to explain their meaning. *Brown v. Brooks,* 25 Pa. 210; *Amorosa v. Ovelman et al.,* 89 Pa. Superior Ct. 377. And where ambiguous language is used, evidence is properly received, not to vary the writing nor to supply omissions, but to explain the meaning intended by the parties in their contract by

the use of the doubtful terms. *Simon v. Myers,* 284 Pa. 3, 130 A. 256; *Rochester & Pgh. C. & I. Co. v. Makoma Coal Co.,* 271 Pa. 394, 114 A. 261. Under the rule, evidence of prior negotiations and contemporaneous understandings between the parties to the agreement is admissible to remove the ambiguity by showing which meaning was attached to it by them. *Laney et ux. v. Columbia Nat. Gas Co.,* 305 Pa. 527, 534, 158 A. 266.

The interpretation given by the parties to a contract as shown by their acts or declarations will ordinarily determine its meaning. *Armstrong v. Standard Ice Co.,* 129 Pa. Superior Ct. 207, 213, 195 A. 171. When the meaning of a contract is doubtful, "the circumstances attending its execution and the subsequent acts of the parties may always be considered in determining the intent with which the words were used": *Rochester & Pgh. C. & I. Co. v. Makoma Coal Co.,* supra. The regulations of the O.P.A. had the force of law. A jury, under plaintiff's evidence, would be justified in adopting as a reasonable, if not the only rational, construction of the contract, that the obligation of the defendant to deliver "O.P.A. rent registrations" contemplated the delivery of certificates of registration of apartments filed in accordance with the law or at rentals which had been approved by the O. P. A. There is evidence from which a jury could infer that the contract was so construed by the parties.

Defendant, in her affidavit of defense, denied that she "filed delinquent registrations for five units to make the aggregate of ten units." Impliedly her denials recognize her obligation to deliver approved registrations for all ten apartments at the rentals reserved in the leases as they existed at the time the contract was executed. She averred that she had registered all ten units in 1942 but admittedly was unable to produce approved registrations for the five units in question at the time of settlement. There are other circumstances which indicate the intent of the parties. Plaintiff undertook to buy the

property as an investment on definite representations made by defendant's agent as to the amount of the gross total monthly rents of the ten apartments. And prior to the date for settlement defendant delivered to plaintiff a schedule of the rents of the ten apartments as reserved in the existing leases (in the total amount represented by her agent), without any reference to the fact that five of the leases were subject to reduction of rents by the Office of Price Administration. In ascertaining the intent of the parties in their use of the term "O.P.A. rent regulations", it may be noted that by virtue of the O.P.A. regulations in effect at the time of the agreement of sale, registrations duly filed and approved by the O.P.A. established the validity of the rents reserved; delinquent registrations on the other hand were no more than applications for approval of the leases, subject to reduction of the rents by the O.P.A. and a refund to the tenants of the excess of rents collected over and above the maximum rents allowed.

On a retrial of this case the proper construction of the ambiguous phrase in the contract will be for the jury in the light of all the circumstances including such acts and declarations of the parties as indicate the intent with which the words were used.

Order reversed with a venire.