## Haefele, Appellant, v. Davis.

Argued April 11, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Max Rosenn,* with him *Rosenn & Rosenn,* for appellants.

*Nelson A. Bryan* and *Thomas E. Harris,* with them *Frank P. Lenahan* and *Elliot Bredhoff,* for appellees.

OPINION PER CURIAM, June 27, 1951:

This case involves the seniority rights of the three plaintiffs, appellants in this court. After preliminary objections were dismissed to the complaint which asked for an injunction against defendants restraining them from interfering with the seniority rights of the plaintiffs and their employment and asking for damages for previous interference, a hearing was held, findings of fact were made by the Chancellor, President Judge VALENTINE, and an order was made dismissing the bill of complaint.

All three of the plaintiffs have been employed by the Vulcan Iron Works for a number of years. All are machinists, and were members of the defendant Union. In February, 1945, plaintiff Martin F. Haefele, was upgraded to the position of foreman in this plant. In September, 1947, the other two plaintiffs were also upgraded to foremen. Because of a recession in business conditions all three plaintiffs were dismissed as foremen on June 15, 1949. They did not remain members of the Union when they became foremen. Due to the ob-

jections of the defendant Union none of the plaintiffs have been reemployed by the company as machinists and the Union by official action has denied them membership.

Plaintiffs' position is that by reason of seniority rights they were entitled to be employed as machinists when they were downgraded. In support of this position they contend that when they were upgraded to the position of foremen they did not *lose* their previously acquired seniority rights. They do not take the position that the time spent as foremen counted toward their seniority.

The collective bargaining agreement executed between the Company and the Union provides as to seniority rights as follows: "Seniority shall cease upon (a) justifiable discharge; (b) voluntary quitting; (c) if the employee does not return to work within five days after written notice at address appearing on the Company's records. The Company shall notify the Union at the same time the employee is notified to return to work."

The case turns on the proper construction of the ambiguous phrase "voluntary quitting." In construing this phrase, a majority of the court regard as significant the finding of fact, which the court en banc added to those found by the chancellor, as follows: "20. During the negotiations for the collective bargaining agreements, the representatives of the Union proposed that a provision be inserted in the contract which would give a production worker, who was elevated to assistant or foreman, the right, in the event of a decrease in the personnel of the company, to resume his former employment as production worker and retain his seniority status. This was not assented to by the management of the company and no such provision was inserted in any of the contracts."

However, when the testimony on which this additional finding was based was introduced by defendants' witness, the plaintiffs-appellants moved to strike it out as violating the parol evidence rule. Whereupon the learned Chancellor in his ruling said, "It is very clear, I think, that anything that occurred prior to the execution of that agreement doesn't amount to anything as far as substantive evidence is concerned. Everything is in writing and all the negotiations are merged in the contract and I will allow Mr. Cann's testimony to stand as purely historical to show what happened leading up to the contract."

At the argument counsel for appellants stated, that misled by this ruling, he did not offer evidence to contradict or deny the testimony of defendants' witness on this point. That the court en banc's finding which treated the testimony as a substantive fact notwithstanding the Chancellor's ruling, left him without opportunity to produce contradictory testimony. In the circumstances we cannot pass on the question raised because of the present state of the record.

While a majority of this court deem the testimony of deliberate omission of the provision in question relevant for the purpose of determining the meaning of the ambiguous phase (see *Simon v. Myers,* 284 Pa. 3, 130 A. 256 (1925); *Cirotti v. Wassell,* 163 Pa. Superior Ct. 292, 60 A. 2d 339 [1948]), still the court en banc should not have made the additional finding without first affording appellants the opportunity of offering evidence on this point to contradict what the appellees had introduced. To enable this to be done we must reverse the decree appealed from and remand the record with directions to reopen the proceeding so that appellants may be afforded an opportunity to produce evidence contradicting the defendants' testimony on this point. After which the Chancellor should make

the additional finding in accordance with the fact as he may find it.

Reversed and remanded for further proceedings as above indicated; costs to abide the event.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

The majority opinion has remanded this case to the court below to admit evidence of the prior negotiations of the parties in order to aid it in determining the meaning of the words "voluntary quitting". The paragraph in question of the contract of January 1, 1943 and of the collective bargaining agreement of October 17, 1945 is short and clear: "Seniority shall cease upon (a) justifiable discharge; (b) *voluntary quitting;* (c) *if the employee does not return to work** within five days after written notice to address appearing on the Company's records. The Company shall notify the Union *at the same time the employee is notified to return to work.*"

The words "voluntary quitting" can not be considered alone, but must be considered in conjunction with the rest of the sentence and the entire paragraph; and when so considered *it is clear that they refer to a voluntary quitting by an employee of his work or employment.* Any other interpretation of the contract would be not only a distortion of the English language —*a promotion in America is not a "quitting"*—but also would be obviously very unfair and unjust to the plaintiffs, as well as injurious to the fundamentals of business efficiency and progress. Yet that would be the effect if an employee's promotion was interpreted to be a "voluntary quitting of his employment." There is, in my judgment, no ambiguity in the language of the contract or of the collective bargaining agreement and

———

\* Italics throughout, ours.

therefore no evidence of the prior negotiations between the union and the employer is admissible: *Grubb v. Rockey,* 366 Pa. 592, 79 A. 2d 255; *Gianni v. Russell,* 281 Pa. 320, 126 A. 791; *Speier v. Michelson,* 303 Pa. 66, 154 A. 127; *O'Brien v. O'Brien,* 362 Pa. 66, 66 A. 2d 309.

I would hold that seniority had not ceased under the above mentioned agreement and that the decree of the court below should be reversed with directions to grant plaintiffs the relief sought in their bill of complaint.