BLACK GRIEVANCE COMMITTEE, Ulysses Miles, Alfred Murray, Henri P. Freeland, Robert Parrish, Joanne Bond, George Wright, William Hand, Calvin Brown, on behalf of themselves and all others similarly situated

v.

PHILADELPHIA ELECTRIC COMPANY.

Civ. A. No. 75–3156.

United States District Court, E. D. Pennsylvania.

June 14, 1978.

Herbert B. Newberg, Philadelphia, Pa., for plaintiff.

John F. Smith, III, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

▮ Plaintiff Black Grievance Committee ("Committee") and seven of its members brought this action on behalf of themselves and all others similarly situated to redress the alleged employment discrimination practices of defendant Philadelphia Electric Company ("PECO"). Plaintiffs' claims, as outlined in their First Amended Complaint,[1] are based upon Title VII of the

---

1. Plaintiffs' original complaint, filed November 4, 1975, alleged employment discrimination by PECO on the basis of race and national origin. The complaint, presented in five separate counts, alleged the deprivation of rights secured by 42 U.S.C. §§ 1981 and 1983, Executive Order No. 11246, the Thirteenth Amendment and the Equal Protection and Due Process clauses of the Fifth and Fourteenth Amend-

ments to the United States Constitution. On August 11, 1976, plaintiffs filed motions, pursuant to Fed.R.Civ.P. 15 and 21, respectively, to amend their complaint and to drop Calvin Brown as a party plaintiff, which motions were granted by Order of this Court on September 15, 1976. In their First Amended Complaint filed September 16, 1976, plaintiffs restated in Count I the causes of action under 42 U.S.C.

Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000e *et seq.,* 42 U.S.C. § 1981 and Executive Order No. 11246 ("E.O. 11246"), *as amended,* 41 C.F.R. Ch. 60–2(B).[2] The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, 1343, and 42 U.S.C. § 2000e–5(f). The complaint, brought as a class action on behalf of all past and present black and Spanish-surnamed employees, and past and future potential black and Spanish-surnamed applicants for employment, alleges that PECO has discriminated against black and Spanish-surnamed persons on the basis of race and national origin with respect to recruitment, hiring, job assignments, transfers, promotions, testing, wages, fringe benefits, performance ratings, termination, and other conditions, privileges and policies of employment with PECO, and that such actions and practices deny or reduce the equal opportunities available to black and Spanish-surnamed persons regarding incidents of employment within PECO.

The Committee, an unincorporated organization consisting of approximately 200 black and Spanish-surnamed members, was created in 1968 for the specific purpose of representing its members injured by unlawful employment practices within PECO. The individually named plaintiffs, black citizens from the Philadelphia metropolitan area, are all members of the Committee and are all present or past employees of PECO.[3] Defendant PECO, a Pennsylvania corpora-

tion, is a public utility which provides electric power and other services in southeastern Pennsylvania and northern Maryland.

Presently before the Court are plaintiffs' motions for certification of this suit as a class action, pursuant to Fed.R.Civ.P. 23(b)(2), and to amend their First Amended Complaint and their motion for class certification, pursuant to Fed.R.Civ.P. 15 and 23(c)(1), respectively. For the reasons stated below, we will grant in part and deny in part plaintiffs' motion for class certification and we will certify, pursuant to Fed.R. Civ.P. 23(c)(4)(B), the following subclasses: (A) With respect to claims based upon Title VII, 42 U.S.C. § 2000e *et seq.,* alleging employment discrimination on the basis of race: (1) all present employees of PECO, all former employees who left the employ of PECO on or after March 22, 1975, and all applicants for employment with PECO who applied and were rejected on or after March 22, 1975, and who were neither parties to, nor in privity with parties to, the 1973 consent decree between PECO and the United States Attorney General who allege discrimination on the basis of race. This class shall be represented by plaintiffs Freeland, Hand, Bond and Wright; (2) all present employees of PECO and all former employees who left the employ of PECO on or after March 22, 1975, who were parties to, or in privity with parties to, the 1973 consent decree between PECO and the

§ 1981 and Executive Order No. 11246, dropped the remaining counts of the original complaint and added a cause of action under Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000e *et seq.* The claims of plaintiff Calvin Brown were voluntarily dismissed without prejudice because of a change in his personal circumstances.

**2.** The Court notes that it is unclear whether plaintiffs, in their First Amended Complaint, are advancing a separate cause of action under Executive Order No. 11246 ("E.O. 11246") or whether they are alleging a denial of equal rights guaranteed by E.O. 11246 through a cause of action based upon 42 U.S.C. § 1981. Assuming, *arguendo,* that the plaintiffs intend the former, we note that, although E.O. 11246 has the force and effect of law, it does not create an express private right of action, *Traylor v. Safeway Stores, Inc.,* 402 F.Supp. 871,

874 (N.D.Cal.1975); *cf. Farmer v. Philadelphia Electric Co.,* 329 F.2d 3, 9 (3d Cir. 1964); *Farkas v. Texas Instruments, Inc.,* 375 F.2d 629 (5th Cir.), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967), nor an implied right of action, *Droughn v. FMC Corp.,* 74 F.R.D. 639, 644 (E.D.Pa.1977); *Traylor v. Safeway Stores, Inc., supra,* 402 F.Supp. at 874–876. Because no cause of action can be based upon E.O. 11246, we will address ourselves only to plaintiffs' causes of action based upon Title VII and 42 U.S.C. § 1981.

**3.** Plaintiffs Miles, Murray, Freeland and Hand are PECO employees in the Transmission and Distribution Department ("T&D"). Plaintiffs Wright, Bond and Parrish are former PECO employees and worked, respectively, in T&D, Customer Service and the Contingent Labor Force.

United States Attorney General who: (a) seek enforcement of the 1973 consent decree; and/or, (b) state a cause of action alleging discrimination on the basis of race which was not brought, and could not have been brought, at the time of the filing of the complaint upon which the consent decree was based. This class will be represented by plaintiffs Miles, Murray and Parrish; (B) with respect to claims based upon 42 U.S.C. § 1981, alleging employment discrimination on the basis of race, all present employees of PECO, all former employees who left the employ of PECO on or after November 4, 1973, and all applicants for employment with PECO who applied and were rejected on or after November 4, 1973. This class shall be represented by plaintiffs Freeland, Hand, Bond and Wright. In addition, we will deny plaintiffs' motions to amend.

## I. CLASS ACTION CERTIFICATION

### A. *Effect of the Consent Decree*

The plaintiffs, by their motion for class certification, request this Court to certify a class of all past and present black and Spanish-surnamed employees, and past and future potential black and Spanish-surnamed applicants for employment. PECO has filed a motion in opposition to plaintiffs' request for class certification which argues that class certification in this case is barred by the doctrines of *res judicata* and collateral estoppel because the claims of the class are identical to the claims raised in a "pattern or practice" suit which was initiated by the Attorney General of the United States ("Attorney General") against PECO on July 26, 1972,[4] and which resulted in a comprehensive consent decree in 1973 ("consent decree"). In response, plaintiffs argue that a consent decree entered into by the Attorney General and PECO does not bar a subsequent suit brought on behalf of private litigants, that substantial portions of the consent decree are inadequate and that

they are not barred from seeking relief in addition to that provided in the consent decree.[5] We hold that those plaintiffs who were neither parties to, nor in privity with parties to, the consent decree are not barred from requesting all relief, on behalf of themselves and all others similarly situated, to which they are entitled under the claims alleged in their complaint. We hold, further, that those plaintiffs who were parties to, or in privity with parties to, the consent decree may seek to enforce, on behalf of themselves and all others similarly situated, the terms of the consent decree and, in addition, may seek relief, on behalf of themselves and all others similarly situated, based upon causes of action which were not brought, and could not have been brought, at the time the Attorney General's complaint was filed but which are alleged in the present complaint.

■ The doctrine of *res judicata* precludes relitigation of the same cause of action between the same parties, or those in privity with the same parties, to an action where a final, valid judgment has been rendered on the merits. *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 578–579, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), *citing Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1876). The rule applies " 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Id.* at 579, 94 S.Ct. at 812; *Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583 (3d Cir. 1975); *McNellis v. First Fed. Sav. & L. Ass'n. of Rochester, N. Y.,* 364 F.2d 251, 254 (2d Cir. 1966). The doctrine of collateral estoppel operates to bar relitigation of an issue in a subsequent proceeding between parties or their privies where the second action is based upon a different cause of action than was litigated in the first action if the prior

---

4. *United States v. Philadelphia Electric Co.,* Civil Action No. 72–1483 (E.D.Pa.1972).

5. Plaintiffs have filed pretrial memoranda comparing the relief requested in the present case

to that provided in the 1973 consent decree. It is plaintiffs' position that the consent decree is deficient with respect to all allegations of employment discrimination in this case.

adjudication resulted in the identical issues being distinctly raised and actually litigated and if it was necessary to support the initial, prior judgment. *Donegal Steel Foundry Co. v. Accurate Products Co., supra,* 516 F.2d at 588; *Murphy v. Landsburg,* 490 F.2d 319, 322 (3d Cir. 1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1941, 40 L.Ed.2d 289 (1974). The doctrine of collateral estoppel does not apply to matters which might have been, but which were not, litigated and determined in the prior action. *McNellis v. First Federal Sav. & L. Ass'n. of Rochester, N. Y., supra,* 364 F.2d at 254. Neither the doctrine of *res judicata* nor of collateral estoppel bars a private citizen from seeking relief identical to that obtained by the Attorney General where those private citizens were neither parties to, nor in privity with parties to, the Attorney General's action. *Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201, 1203 (2d Cir. 1972). Nor are private citizens, neither parties nor privies, precluded from seeking additional relief than that provided in a consent decree between the Government and a private employer. *Dickerson v. United States Steel Corp.,* 64 F.R.D. 351, 360 (E.D.Pa.1974); *United States v. Allegheny-Ludlum Industries, Inc.,* 63 F.R.D. 1, 6 (N.D.Ala.1974),

*aff'd,* 517 F.2d 826 (5th Cir. 1975). *See also Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 803 (3d Cir. 1974).

In the instant case, three of the individual plaintiffs, Ulysses Miles ("Miles"), Alfred Murray ("Murray") and Robert Parrish ("Parrish"), were named in the appendix to the consent decree.[6] They are, therefore, precluded by the doctrine of *res judicata* from raising any claim which was raised, or which could have been raised, in the consent decree complaint and which was resolved in the consent decree in a manner comparable to a final adjudication on the merits. In addition, Miles, Murray and Parrish are barred by the doctrine of collateral estoppel from relitigating any issue which was resolved by the consent decree and which was distinctly raised, actually litigated and necessary to support that determination. However, Miles, Murray and Parrish are not barred from seeking to enforce, on behalf of themselves and all others similarly situated, the terms of the consent decree. Nor are they barred from raising any claim which was not brought,[7] and which could not have been brought, at the time the consent decree was filed.[8]

6. Plaintiffs Miles and Murray were listed in Appendix C to the consent decree as among those PECO employees to be considered for placement in a lineman/troubleman promotion pool. Plaintiff Parrish was listed in Appendix G to the consent decree as among those persons to be considered for regular employment with PECO in vacant nonlaborer entry-level positions, as defined in Article III of the consent decree.

7. The Court notes that the rights of Miles, Murray and Parrish, and other PECO employees listed in the appendices to the consent decree, to pursue individual complaints of employment discrimination with the Equal Employment Opportunity Commission, or before any other tribunal, are expressly preserved under Article XIII of the consent decree, approved by this Court on September 19, 1973, which states, in pertinent part:

The relief herein accorded shall be deemed to be sufficient under Title VII of the Civil Rights Act of 1964, as amended, and any and all other equal employment laws, ordinances, regulations, and orders as respects any position, line of progression, and/or department affected by this Decree, and any and all of

the Company's employees and/or workers therein, as respects any and all issues raised in the Complaint herein.

The execution and implementation of this Decree shall have no effect upon the handling or disposition of individual complaints of employment discrimination filed with the Federal Equal Employment Opportunity Commission or before any other tribunal, federal, state, local or private, after the date of this Decree, except that the Company may in the course of any proceedings, refer to the same, and to its performance thereunder, to the extent that it is relevant to such proceedings, and except further that this Decree shall constitute a final resolution as between the parties of the issues raised in the Government's Complaint and compliance with this Decree shall constitute compliance with Title VII of the Civil Rights Act of 1964, as amended, and any other equal employment law, ordinance, regulation, or order, as respects any and all issues raised in the Government's Complaint.

8. In this case, plaintiffs alleged that (1) Miles and Murray have requested promotion and transfer to higher-rated positions and have

■ On the other hand, plaintiffs Henri P. Freeland ("Freeland"), Joanne Bond ("Bond"), George Wright ("Wright") and William Hand ("Hand") are not barred, by either the doctrine of *res judicata* or collateral estoppel, from bringing any claim against PECO to which they are procedurally and legally entitled because they were neither parties to, nor in privity with parties to, the consent decree. .

### B. *General Requirements*

■ For a case to be certified as a class action, plaintiffs must satisfy the Court that the general requirements of Fed.R. Civ.P. 23 have been met. Fed.R.Civ.P. 23(a) provides that one or more members of a class may sue or be sued as representative parties on behalf of all parties similarly situated only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In addition to satisfying the mandatory prerequisites of Rule 23(a), the Court must find that the action is properly maintainable under one of the three subdivisions of Rule 23(b). *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 248 (3d Cir. 1975). Plaintiffs in this case seek certification of a class under Fed.R.Civ.P. 23(b)(2), which requires a finding that PECO, the party opposing the class, "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The requirements of Fed.R.Civ.P. 23 are liberally applied in employment discrimination actions in order to effectuate Title VII's policy of equal employment opportunity. *Gay v. Waiters' and Dairy Lunchmen's Union,* 549 F.2d 1330, 1333–1334 (9th Cir. 1977); *Hackett v. McGuire Bros., Inc.,* 445 F.2d 442, 446–447 (3d Cir. 1971).

■ The numerosity requirement of Fed. R.Civ.P. 23(a)(1) is satisfied if joinder of all the putative members of the class is impracticable. Plaintiffs allege that over 5,000 blacks, and an indeterminate number of Spanish-surnamed persons, are currently employed by PECO, and that PECO discriminates against such employees on the basis of race and national origin. On the basis of this allegation, we find that the class is so numerous that joinder of all members is impracticable and that the requirement of Fed.R.Civ.P. 23(a)(1) is satisfied.

■ The commonality requirement of Fed.R.Civ.P. 23(a)(2) is satisfied if there are questions of law or fact which are common to the class. It is not necessary, however, that all members of the class experience discrimination identical to that alleged by the individually named plaintiffs. *Senter v. General Motors Corp.,* 532 F.2d 511, 524 (6th Cir. 1976); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 340 (10th Cir. 1975). The commonality requirement is satisfied where the alleged unlawful discrimination is a company-wide pattern or practice, even though specific examples of discrimination manifested within the class may differ. *See e. g. Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir. 1969); *Hannigan v. Aydin Corp.,* 76 F.R.D. 502, 507 (E.D.Pa.1977). In determining whether plaintiffs have alleged facts sufficient to support an allegation of company-wide discrimination, we must consider: (1) the nature and impact of the alleged discriminatory practice; (2) the uniformity of the relevant employment practices which affect employment conditions, occupations and work activities; (3) the uniformity of the class membership; and, (4) the degree of centralization in the employer's management and personnel practices. *Hannigan v. Aydin Corp., supra,* 76 F.R.D. at 508; *Harriss v. Pan American World Airways, Inc.,*

been denied their requests because of their race and that (2) Parrish was laid off and illegally transferred by PECO because of his race in

January, 1974, to a company which contracts with PECO to provide laborers.

74 F.R.D. 24, 41 (N.D.Cal.1977). The commonality requirement of Rule 23(a)(2) may also be satisfied where the complaint alleges an "across the board" or permeating policy of discrimination. *Presseisen v. Swarthmore College,* 71 F.R.D. 34, 42, 43 n. 10 (E.D.Pa.1976).[9]

■ In the instant case, plaintiffs allege a company-wide pattern and practice of employment discrimination. First, they claim that the nature and impact of the alleged practice of discrimination on the basis of race or national origin is to deny black and Spanish-surnamed employees the opportunities of equal employment enjoyed by other PECO employees. Specifically, the impact of PECO's alleged discrimination is alleged to prevent black and Spanish-surnamed employees from enjoying the opportunities of hiring, job assignment, wages, promotion and transfer to higher-rated positions, fringe benefits, and other conditions of employment. Second, plaintiffs allege that PECO's relevant employment practices which affect employment conditions, occupations and work activities involve "across-the-board" discrimination against black and Spanish-surnamed employees. Third, plaintiffs allege that the class comprises all past and present black and Spanish-surnamed PECO employees, and past and future potential black and Spanish-surnamed applicants for employment with PECO. Specifically, they allege that a subclass of all black PECO employees, and black applicants for employment with PECO, is uniform with respect to allegations of employment discrimination on the basis of race and that a subclass of all Spanish-surnamed PECO employees, and Spanish-surnamed applicants for employment with PECO, is uniform with respect to allegations of employment discrimination on the basis of national origin. Fourth, plaintiffs allege that PECO's Personnel and Industrial Relations Department centrally manages all initial hiring, promotions, transfers, training, payroll and other practices and policies for the entire company.

We find, based upon the allegations of the complaint, that plaintiffs have alleged facts sufficient to satisfy the commonality requirement of Fed.R.Civ.P. 23(a)(2). Specifically, the question of fact common to the class is whether PECO has engaged in a company-wide pattern or practice of discrimination which has denied black and Spanish-surnamed persons equal employment opportunities with respect to hiring, job assignment, wages, promotion and transfer to higher-rated positions, fringe benefits and other conditions of employment. The question of law common to the class is whether defendants' alleged conduct violates Title VII and 42 U.S.C. § 1981.

■ The typicality requirement of Fed. R.Civ.P. 23(a)(3) is satisfied if the claims or defenses of the representative parties are typical of the claims or defenses of the class. Plaintiffs must demonstrate that their claims are linked with the claims of the members of the class they seek to represent. *Long v. Sapp,* 502 F.2d 34, 42–43 (5th Cir. 1974). Factors to be considered in determining whether plaintiffs' claims are sufficiently analogous to those of other class members are: (1) the similarity between the terms and conditions of employment of plaintiffs and the class members; (2) the similarity between the alleged discrimination experienced by plaintiffs and by the class members; and, (3) the compatibility of the relief requested by plaintiffs and that appropriate for the class. *Hannigan v. Aydin Corp., supra,* 76 F.R.D. at 508;

---

**9.** Other courts in this district have also held that allegations of "across-the-board" discrimination are sufficient to support a finding of commonality under Fed.R.Civ.P. 23(a)(2). *See Webb v. Westinghouse Electric Corp.,* 78 F.R.D. 645, 649–651 (E.D.Pa.1978); *Hannigan v. Aydin Corp., supra,* 76 F.R.D at 507; *Groves v. Insurance Co. of North America,* 433 F.Supp. 877, 882–883 (E.D.Pa.1977); *Martin v. Easton Publishing Co.,* 73 F.R.D. 678, 683 (E.D.Pa.

1977); *Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1, 2 (E.D.Pa.1975); *Richerson v. Fargo,* 61 F.R.D 641, 642–643 (E.D.Pa.1974); *Paddison v. Fidelity Bank,* 60 F.R.D. 695, 698 (E.D.Pa.1973); *Williams v. Local No. 19, Sheet Metal Workers International Association,* 59 F.R.D. 49, 53 (E.D.Pa.1973); and *Mack v. General Electric Co.,* 329 F.Supp. 72, 76 (E.D.Pa. 1971).

*Harriss v. Pan American World Airways, Inc., supra,* 74 F.R.D. at 42.

In this case, PECO argues that no class certification is necessary because plaintiffs do not present claims which are typical of the alleged company-wide discrimination within PECO. In the alternative, PECO argues that any certification should be limited to the Electric Transmission and Distribution Department ("T&D"), Philadelphia Division, in which plaintiffs Miles, Murray, Freeland and Hand are currently employed. We disagree.

First, the terms and conditions of employment of the plaintiffs are alleged to be similar to the terms and conditions of employment of the members of the class. Specifically, all initial hiring, promotions, transfers, training, payroll and other practices and policies of employment within PECO are allegedly centrally managed by PECO's Personnel and Industrial Relations Department.[10] *See* Affidavit of Herbert B. Newberg, dated October 6, 1976. This claim of central management of the terms and conditions of employment throughout PECO suggests a high degree of similarity between the terms and conditions of employment of plaintiffs and of the members of the class which does not warrant limiting certification to the T&D Department.

Second, plaintiffs' claims support a finding of a high degree of similarity between the alleged discrimination experienced by the plaintiffs and by the class members. Plaintiffs allege "across-the-board" discrimination on the basis of race and national origin and against all black and Spanish-surnamed employees, with respect to hiring, job assignment, wages, promotion, transfer, termination and other conditions and privileges of employment. We have held that, in addition to satisfying the commonality requirement of Fed.R.Civ.P. 23(a)(2), allegations of an "across-the-board" or permeating policy of discrimination are also sufficient to satisfy the typicality requirement of Fed.R.Civ.P. 23(a)(3). *Presseisen v. Swarthmore College, supra,* 71 F.R.D. at 42, 43 n. 10.

Third, the relief requested by the plaintiffs is compatible with the relief which would be appropriate for the class. In addition to a declaratory judgment that PECO's employment practices are discriminatory and unlawful, plaintiffs seek injunctive relief modifying PECO's existing employment, assignment, seniority, promotion, transfer, testing and evaluation practices. Further, plaintiffs seek immediate promotion of plaintiffs and class members, as well as the adjustment of seniority, wages, and other benefits they allegedly would have received but for PECO's alleged discrimination. Plaintiffs also ask that we grant back pay and punitive damages under 42 U.S.C. § 1981, general damages for inadequate training, humiliation and harassment, and attorneys' fees and costs. The declaratory and injunctive relief requested by the plaintiffs against PECO's allegedly discriminatory employment practices is compatible with, and would provide adequate relief for, the members of the class they seek to represent. In addition, we have held that a plaintiff's request for damages in the form of back pay, as well as other equitable relief, does not preclude the maintenance of a class action under Fed.R.Civ.P. 23(b)(2). *Presseisen v. Swarthmore College, supra,* 71 F.R.D. at 45, *citing Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 251.

In conclusion, we find that plaintiffs' claims of employment discrimination are typical of the claims of the class, as based upon the similarity of the terms and conditions of employment for all PECO employees, the alleged uniformity of racial discrimination within PECO, and the high compatibility of the relief requested by

---

10. PECO distributes to each of its employees a looseleaf handbook, entitled "You and Your Job," which describes PECO's uniform, company-wide policies for all of its departments concerning hiring, promotions, transfers, employment records, training, counseling and other uniform conditions of employment. The handbook also contains an Executive Organization Chart of PECO which shows that the above terms and conditions of employment are centrally managed by PECO's Personnel and Industrial Relations Department and are uniformly applied to all employees.

plaintiffs and that appropriate for the class, and that these claims satisfy the typicality requirement of Fed.R.Civ.P. 23(a)(3). However, in light of plaintiffs' request for back pay, if plaintiffs prevail in proving PECO's liability, we shall then examine the circumstances which may be peculiar to the individual class members in order to properly ascertain which members should be awarded back pay and in what amount. Therefore, we shall bifurcate the proceeding, to first establish class liability and then, in light of any liability, decide whether back pay claims should be certified under Rule 23(b) or should proceed as individual actions. We shall, accordingly, certify the class only as to declaratory and injunctive relief at this time, and we shall defer a certification ruling on the monetary relief sought with respect to back pay until after a determination of liability.

▉ The adequate representation requirement of Fed.R.Civ.P. 23(a)(4) is satisfied if the representative parties will fairly and adequately protect the interests of the class. Fair and adequate representation requires that the named plaintiffs' attorney be qualified, experienced and generally able to conduct the litigation, and that the plaintiffs' interests not be antagonistic to those of the remainder of the class. *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 247, *citing Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968). In this case, we are satisfied that plaintiffs' counsel is qualified, experienced and generally able to conduct this class action litigation. We must determine, however, whether the interests of the plaintiffs are antagonistic to those of the class. Although suits alleging racial or ethnic discrimination are often, by their very nature, appropriate for certification of a class action, "the mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination." *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395,

405–406, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). A class representative must be part of the class and " 'possess the same interest and suffer the same injury' " as the class members. *Id.* at 403, 97 S.Ct. at 1896, *citing Schlesinger v. Reservists Committee To Stop The War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). In this case, plaintiffs argue that the individually named black plaintiffs,[11] including three former PECO employees, will fairly and adequately protect the interests of black and Spanish-surnamed employees, former employees and applicants with PECO. For the reasons discussed below, we find that:

(1) Plaintiffs Freeland, Hand, Bond and Wright will fairly and adequately represent the interests of the class of black PECO employees, former employees and job applicants who allege discrimination on the basis of race and who were not parties to, nor in privity with parties to, the consent decree;

(2) Plaintiffs Miles, Murray and Parrish will fairly and adequately represent the class of black PECO employees, former employees and job applicants who allege discrimination on the basis of race and who were parties to, or in privity with parties to, the consent decree;

(3) The Committee and each of the individual plaintiffs have interests antagonistic to those Spanish-surnamed PECO employees, former employees and job applicants who allege discrimination on the basis of national origin and are, therefore, inadequate representatives for that class.

▉ First, Freeland, Hand, Bond and Wright are present or former PECO employees who allege discrimination on the basis of race and who were not parties to, nor in privity with parties to, the consent decree. Their interests, and those of former, present and future black PECO employees, are congruent: the elimination of, and injunctive relief from, PECO's alleged discriminatory practices against its employees on the basis of race. Furthermore, the fact that Wright and Bond, former PECO employees who allege discrimination on the

---

11. *See* note 3, *supra.*

basis of race, seek to represent a class consisting of former as well as present employees and job applicants does not establish that their interests are antagonistic to those of the class they seek to represent. *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 247, *citing Mack v. General Electric Co.,* 329 F.Supp. 72, 76 (E.D.Pa.1971).

Second, Miles, Murray and Parrish, present and former PECO employees who allege discrimination on the basis of race, and who were parties to the consent decree, will fairly and adequately represent the subclass of black PECO employees, former employees and job applicants alleging discrimination on the basis of race who seek enforcement of the consent decree and/or who state claims of alleged racial discrimination which were not brought, and could not have been brought, at the time the 1973 consent decree complaint was filed. Their interests are identical to those of the class they seek to represent. In addition, they, as parties to the consent decree, and the members of the class they seek to represent, who were the intended beneficiaries of the consent decree, are the only persons with standing to seek enforcement of the consent decree, either directly or through collateral proceedings. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

 Finally, *none of the individually* named black plaintiffs have interests in common with those of the Spanish-surnamed employees, former employees and job applicants at PECO and, thus, cannot fairly and adequately represent the interests of those persons. Although the black plaintiffs in this case allege a pattern of both racial and national origin discrimination which denies both black and Spanish-surnamed PECO employees their rights under Title VII,[12] it is clear that black plaintiffs possess the same interest and suffer the same injury as only the black class members who experienced the alleged racial discrimination at PECO. Likewise, it is clear that black plaintiffs do not share the same interest as Spanish-surnamed PECO employees who have allegedly suffered discrimination on the basis of national origin. *East Texas Motor Freight System, Inc. v. Rodriguez, supra,* 431 U.S. at 403, 97 S.Ct. 1891; *Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1, 8 (E.D.Pa.1975). This defect is not cured by the fact that the Committee, an unincorporated association representing nearly 200 black and Spanish-surnamed Committee members, seeks to represent, *inter alia,* the class of Spanish-surnamed PECO employees, former employees and job applicants.[13] The Committee is not an adequate representative for the black or the Spanish-surnamed employees because the Committee *per se* is not a member of either class and, therefore, has not suffered the same alleged injury as the

---

**12.** Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a) provides that it shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**13.** The parties have raised the issue of whether the Committee has standing in this case. However, the issue of whether an unincorporated association, as opposed to an individual, may be a representative plaintiff in a class action is distinguishable from the issue of the standing of the association to advance the interests of its members, because standing is not central to the Fed.R.Civ.P. 23(a)(4) requirement that a plaintiff representative in a class action be part of the class and possess the same interest and suffer the same injury as the class members. *East Texas Motor Freight System, Inc. v. Rodriguez, supra,* 431 U.S. at 403, 97 S.Ct. 1891. An association may have standing solely as the representative of its members, even in the absence of any injury to itself, *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), but cannot be an adequate representative of the class unless it meets the requirements of Fed.R.Civ.P. 23(a)(4). *Harriss v. Pan American World Airways, Inc., supra,* 74 F.R.D. at 39 n. 10.

individual class members; namely, the denial of equal employment opportunities within PECO, on the basis of race or national origin, with respect to hiring, job assignment, wages, promotion and transfer, and other conditions of employment.

In conclusion, we find that plaintiffs have satisfied the adequate representation requirement of Fed.R.Civ.P. 23(a)(4) because plaintiffs Freeland, Hand, Bond and Wright, who were not parties to the consent decree, and plaintiffs Miles, Murray and Parrish, who were parties to the consent decree, will fairly and adequately represent the respective subclasses of black PECO employees, former employees and job applicants who allege discrimination on the basis of race. However, because we find that none of the plaintiffs, including the Committee, can be an adequate representative for any aggrieved Spanish-surnamed person, we will only certify, upon satisfaction of Fed.R.Civ.P. 23(b), the two subclasses, defined above, of present and past black PECO employees and unsuccessful black PECO job applicants alleging discrimination on the basis of race.

In addition to meeting the mandatory requirements of Fed.R.Civ.P. 23(a), an action must also qualify under one of the subdivisions of Fed.R.Civ.P. 23(b) to be maintainable as a class action. Plaintiffs seek certification of this case as a class action under Fed.R.Civ.P. 23(b)(2) because they allege that PECO has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole. By its very nature, a class action maintained under Fed.R.Civ.P. 23(b)(2) must be cohesive with respect to those claims tried in the class action. *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 248.

■ A Title VII suit against discriminatory employment practices is necessarily a suit to end discrimination because of a common class characteristic, such as race or national origin. *Id.* at 250. In this case,

the black members of the class share a common characteristic, their race, which is subjected to PECO's alleged discrimination. The class is cohesive, therefore, with respect to the claims of racial discrimination alleged in the complaint. Further, this Title VII action is appropriate to be maintained as a class action under Rule 23(b)(2) because the drafters of the rule specifically contemplated that suits against discriminatory hiring and promotion policies be so maintained. *Id.* at 250, *citing* Advisory Committee's Note to the Proposed Amendments to Rule 23, 39 F.R.D. 69, 102 (1966).

We are satisfied that PECO's alleged employment discrimination on the basis of race is generally applicable to the class of black employees, former employees and job applicants with PECO, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole. We find, therefore, in view of plaintiffs' satisfaction of the mandatory requirements of Fed.R.Civ.P. 23(a), that this case shall be certified as a class action and maintained under Fed.R.Civ.P. 23(b)(2).

### C. *Scope of the Class*

Plaintiffs have brought this action on behalf of themselves and on behalf of all past and present black and Spanish-surnamed employees and past and future potential black and Spanish-surnamed applicants for employment with PECO. The scope of plaintiffs' proposed class is impermissibly broad because of our finding, discussed above, that the individually named black plaintiffs cannot fairly and adequately represent Spanish-surnamed employees and applicants and because of the statute of limitations applicable in actions brought under Title VII and 42 U.S.C. § 1981.

■ First, a plaintiff bringing suit under Title VII must comply with the jurisdictional prerequisites of timely filing a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"),[14] and of timely filing a

---

14. 42 U.S.C. § 2000e–5(e) provides:

(e) A charge under this section shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and cir-

complaint after receipt of the EEOC's statutory notice of the right to sue.[15] *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Where a charging party has instituted proceedings with a state agency which has jurisdiction over discriminatory employment practices, a charge must be filed with the EEOC within 300 days of the occurrence of the alleged unlawful practice. 42 U.S.C. § 2000e–5(e).[16] However, in cases where an employer's alleged discriminatory practices constitute continuing violations of Title VII, a charge may be filed with the EEOC at any time by a present employee. *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 246. Further, a plaintiff who has filed a charge with the EEOC may bring a class action, subject to the requirements of Fed.R.Civ.P. 23, on behalf of those class members who have not filed charges with the EEOC, thereby tolling the statute of limitations for all members of the class. *Id.* at 246. However, a plaintiff cannot represent those persons who could not have filed a charge with the EEOC at the time the plaintiff filed his charge. *Id.* at 246. In other words, 42 U.S.C. § 2000e–5(e) bars from the class those employees who left the employ of the company and those applicants who were denied employment more than 300 days before the plaintiff's filing of the charge with the EEOC. *Id.* at 246.

■ In this case, plaintiffs have complied with the jurisdictional prerequisites of Title VII by timely filing, on January 16, 1976, charges of employment discrimination with the EEOC and by timely filing their civil action complaint within 90 days after receipt of the EEOC's statutory notice of the right to sue.[17] However, plaintiffs cannot represent those persons who could not have filed a charge with the EEOC on

cumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

15. 42 U.S.C. § 2000e–5(f)(1) provides, in pertinent part:

If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

16. *See* note 14, *supra.*

17. Plaintiffs Murray, Parrish and Bond filed charges of PECO employment discrimination with the EEOC on January 16, 1976. Plaintiff Bond also filed an earlier charge, on June 20, 1975, with the Pennsylvania Commission on Human Relations, a Pennsylvania agency authorized to grant or seek relief from such practices. Plaintiffs Miles, Freeland, Hand and Wright filed charges with the EEOC on February 25, 1976. Plaintiff Committee did not file any charge with the EEOC. On July 28, 1976, the EEOC issued the statutory notice of the right to sue to each of the individually named plaintiffs. On August 11, 1976, plaintiffs filed a motion, pursuant to Fed.R.Civ.P. 15, to amend their complaint by adding a cause of action under Title VII, which motion was granted by Order of this Court on September 15, 1976. Plaintiffs' First Amended Complaint, adding a cause of action under Title VII, was filed on September 16, 1976. *See* n. 1 *supra.*

January 16, 1976; namely, those employees who left the employ of PECO and those applicants who were denied employment more than 300 days before the January 16, 1976, filing with the EEOC. Therefore, those employees who left the employ of PECO and those applicants for employment who were rejected by PECO before March 22, 1975, are barred by 42 U.S.C. § 2000e–5(e) from asserting a claim against PECO under Title VII. *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 246; *Presseisen v. Swarthmore College, supra,* 71 F.R.D. at 47–48.

◾ Second, plaintiffs' cause of action under 42 U.S.C. § 1981 is also subject to a statute of limitations which limits the scope of the class. Since Congress has provided no federal statute of limitations for § 1981 actions, we must apply the limitation which would be applicable in the Pennsylvania courts had an action seeking similar relief been brought under Pennsylvania law. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Polite v. Diehl,* 507 F.2d 119, 122 (3d Cir. 1974). We are mindful of the conflict among the federal district courts of Pennsylvania whether § 1981 employment discrimination suits are more closely analo-

gous to Pennsylvania actions based upon contract, which have a six-year statute of limitations, or to Pennsylvania cases sounding in tort, which have a two-year statute of limitations. Although a number of courts in this circuit have held that § 1981 employment discrimination cases are governed by the six-year statute of limitations,[18] 12 P.S. § 31, we join some of the courts in the Western District of Pennsylvania by holding that such cases are more analogous to personal injury actions, controlled by Pennsylvania's two-year statute, 12 P.S. § 34. *Presseisen v. Swarthmore College, supra,* 71 F.R.D. at 40; *Davis v. U. S. Steel Supply,* 405 F.Supp. 394, 395–396 (W.D.Pa.1976); *Gozdanovic v. City of Pittsburgh,* 361 F.Supp. 504, 508 (W.D.Pa.1973); *cf. Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Accordingly, we hold in this case that Pennsylvania's two-year statute of limitations, 12 P.S. § 34, is applicable to plaintiffs' § 1981 cause of action, which bars any § 1981 claim which occurred before November 4, 1973, or two years before the filing of plaintiffs' complaint.

## II. MOTIONS TO AMEND

Plaintiffs have moved to amend both their First Amended Complaint and their

---

**18.** In *Wilson v. Sharon Steel Corp.,* 549 F.2d 276 (3d Cir. 1977), the Third Circuit vacated a district court order which dismissed plaintiffs' claims under 42 U.S.C. § 1981 as time-barred under Pennsylvania's two-year statute of limitations. On remand, the Third Circuit in *Wilson* directed the attention of the district court to the authorities cited in 22 P.L.E., Limitation of Actions, §§ 31, 32, including *Haefele v. Davis,* 399 Pa. 504, 160 A.2d 711 (1960) as being illustrative of the appropriate limitation period. *Id.* at 280. In *Haefele,* the Pennsylvania Supreme Court stated that the filing of the suit, which alleged tortious interference with plaintiffs' seniority rights, satisfied the statute of limitations because the complaint was filed within six years of the original injunction hearing. 399 Pa. at 511, 160 A.2d 711. However, a close analysis of the *Haefele* facts, as found in an earlier Pennsylvania Supreme Court opinion involving the same undisputed facts, reveals that plaintiffs' allegations of interference with their seniority rights were reviewed in light of the existent collective-bargaining agreement executed between the company/employer and the union. *See Haefele v. Davis,* 368 Pa. 23, 25,

81 A.2d 530 (1951). The disposition of the *Haefele* litigation hinged upon the proper construction of an ambiguous phrase in the collective-bargaining agreement. *Id.* at 25, 81 A.2d 530. The alleged tortious interference with the *Haefele* plaintiffs' *contractual* seniority rights is distinguishable from the alleged tortious interference by PECO of plaintiffs' statutory *civil rights.* We agree with Judge Troutman's interpretation of *Wilson,* as stated in *Pierce v. Catalytic, Inc.,* 430 F.Supp. 1180, 1183 (E.D.Pa. 1977), wherein he stated that the Third Circuit's reference to *Haefele* as being illustrative of Pennsylvania's six-year statute of limitations in § 1981 actions "provided only a guideline, not a rule of law." Indeed, in *Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894 (3d Cir. 1977), decided after *Wilson,* the Third Circuit noted that "we do not now hold that all actions in the federal courts of Pennsylvania under sections 1981 and 1982 are governed by the six year limitation of [12 P.S.] section 31." *Id.* at 903 n. 27. *See also Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 n. 11 (3d Cir. 1978).

motion for class certification, pursuant to Fed.R.Civ.P. 15(a) and 23(c)(1), respectively, to redefine and expand their class definition to include females and to thereby allege sex discrimination within PECO. Plaintiffs argue that the inclusion of females in the class definition would promote coordination between this case and a subsequent suit against PECO which is also before this Court. *See Council for Spanish Speaking Organizations, Inc. v. Philadelphia Electric Co.,* Civil Action 76–3358 (E.D.Pa., filed October 28, 1976). In addition to the facilitation of class certification rulings in the two cases, plaintiffs contend that the expansion of the proposed class to include females will not prejudice the rights of PECO because the nature of the litigation in both suits is nearly identical. In response, PECO argues that plaintiffs' efforts to achieve symmetry with another case before this Court is an improper basis to amend, especially after the close of discovery, extensive argument and lengthy briefing on the issue of class action certification in this case. Further, PECO argues that Joanne Bond, the only named female plaintiff, will not be a proper class representative for female PECO employees alleging sex discrimination because Bond did not raise any claim of sex discrimination either in her charge with the EEOC[19] or in her civil action complaint.

A plaintiff bringing suit under Title VII must comply with the jurisdictional prerequisites, discussed above, of timely filing a charge of employment discrimination with the EEOC, and of timely filing a civil action complaint within 90 days after receipt of the EEOC's statutory notice of the right to sue. 42 U.S.C. §§ 2000e–5(e), 20000e–5(f)(1). The scope of a civil action properly brought under Title VII is defined not by the often inartful allegations contained in the factual statement of the EEOC charge, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the specific charges of discrimination. *Bernstein v. National Liberty International Corp.,* 407 F.Supp. 709, 713 (E.D.Pa.1976).

In this case, plaintiffs cannot redefine and expand the scope of their class action to include allegations of sex discrimination within PECO because they have failed to comply with the jurisdictional prerequisite of timely filing with the EEOC a charge of sex discrimination. All of the charges filed by the plaintiffs with the EEOC allege employment discrimination based only upon race and national origin. Factual allegations of sex discrimination are of a scope that cannot reasonably be expected to grow out of an EEOC investigation of the specific charges of racial and national origin discrimination.

With respect to plaintiffs' claims brought pursuant to 42 U.S.C. § 1981, it is clear that the main thrust of § 1981 is to prohibit discrimination based upon race. *Presseisen v. Swarthmore College, supra,* 71 F.R.D. at 38. In *Presseisen,* we held that sex discrimination claims are outside the

19. Each plaintiff alleged in his charge filed with the EEOC that:

"There exists a climate of racial discrimination at Philadelphia Electric that affects all employment opportunities. Philadelphia Electric engages in and practices a pattern of racial and national origin discrimination that includes but is not limited to the following practices: utilization of tests for hiring and promotion that are not job related and which deny equal opportunity; ulitization [sic] of criteria and educational standards for hiring and promotion that deny equal opportunity; discrimination in pay; lay offs; seniority systems; job training; application of job rules and regulations; terms and conditions of employment; job ratings and performance ratings; and other practices all of which serve to deny Black and Spanish-surnamed individuals the rights guaranteed by Title VII of the Civil Rights Act of 1964 as amended."

In addition to these general allegations, plaintiff Bond specifically alleged in her charge filed with the EEOC: "I believe that if I were white I would not have been fired from my position [in PECO's Customer Service Department] . . . . I believe the termination was severe punishment for the infraction alleged by the company and believe it to be more severe because I am black."

Neither Bond nor any other plaintiff in this case filed a charge with the EEOC alleging sex discrimination within PECO. Further, plaintiffs have not amended their EEOC charges to reflect additional allegations of sex discrimination within PECO. *See* 29 C.F.R. § 1601.11(b).

parameters and scope of § 1981. *Id.* at 38. In this case, therefore, plaintiffs cannot redefine and expand the scope of their class action to include allegations of sex discrimination within PECO as based upon 42 U.S.C. § 1981.

In summary, plaintiffs cannot redefine and expand the scope of their class action to include allegations of sex discrimination within PECO, as based upon either Title VII, 42 U.S.C. § 2000e *et seq.* or upon 42 U.S.C. § 1981.

Therefore, plaintiffs' motions to amend both their First Amended Complaint and their motion for class certification will be denied.

